IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PENN BIVINS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARCO RODRIGUEZ, et al.,<br><br>　　　　　Defendants. | No. 2:18-CV-2671-JAM-DMC-P<br><br><br>FINDINGS AND RECCOMMENDATIONS |

　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983 and <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). Pending before the court are: (1) defendant Sarabia's motion to dismiss (ECF No. 43); and (2) defendant Rodriguez's motion to dismiss (ECF No. 56).

///
///
///
///
///
///
///
///

1

# I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's first amended complaint. See ECF No. 29. Plaintiff names the following as defendants: (1) Marco Rodriguez, a Deputy U.S. Marshall, and (2) Chris Sarabia, a California Highway Patrol Officer.[1] See ECF No. 29, pg. 1. Plaintiff's first amended complaint contends that the defendants violated his Fourth, Eighth, and Fourteenth Amendment rights by conducting an unnecessarily hostile arrest of plaintiff. Id. at 1-3. The first amended complaint does not contain any stand-alone claims under the Fifth Amendment.

According to plaintiff, on November 21, 2017, plaintiff and defendants were engaged in a highspeed vehicle chase to apprehend plaintiff. Id. At some point during the chase, defendant Rodriguez struck plaintiff's vehicle, causing it to spin out of control. Id. When the vehicle came to a stop, both defendants approached plaintiff's vehicle with their firearms drawn. Id. Plaintiff raised his hands in surrender and told the defendants to not shoot him. Id. After this, Rodriguez told plaintiff to put his hands in the air and step out of the vehicle, yelled profanity at him, and shot at plaintiff. Id. Plaintiff was struck in his left forearm and right-hand ring finger. Id.

Plaintiff then ducked down in his car and drove approximately 200-300 feet away to avoid being shot again. After this, Sarabia shot at plaintiff, striking the vehicle's window, hood, and door. Id. As a result, glass shattered and cut plaintiff on his right hand and arm. Id. Plaintiff contends that: (1) he initially attempted to surrender; (2) he only fled to avoid being shot again; and (3) defendants' violent conduct deprived him of his constitutional rights. Id.

# II. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740

---

[1] Plaintiff's original complaint identifies Marco Rodriguez as a "Deputy U.S. Marshal" and Chris Sarabia as a "California Highway Patrol Officer." See ECF No. 1, pg. 2. The first amended complaint identifies defendant Rodriguez as "Deputy" and defendant Sarabia as "CJP." See ECF No. 29, pg. 1.

(1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

#### A. Defendant Sarabia's Motion to Dismiss

On April 22, 2019, defendant Sarabia filed a motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) to dismiss plaintiff's Eighth and Fourteenth Amendment claims. See ECF No. 43-1, pgs. 3-4. Defendant Sarabia presents no argument concerning plaintiff's Fourth Amendment claim. Id. On May 13, 2019, plaintiff filed a statement of non-opposition to defendant Sarabia's motion to dismiss. See ECF No. 49. In the statement, plaintiff agrees to dismissal of his Eighth and Fourteenth Amendment claims and indicates his desire to proceed solely on his Fourth Amendment claim. See Id.

On May 20, 2019, defendant Sarabia filed a reply. See ECF No. 51. In his reply, defendant references the Fifth Amendment for the first time in this case and argues that "[p]laintiff failed to oppose the motion to dismiss. . . as to the Fifth Amendment, which is also a concession as to its merits." Id. at 1. Defendant Sarabia adds: "There is no basis for a cause of action based on the Fifth Amendment." Id. Because plaintiff's first amended complaint does not allege any claim under the Fifth Amendment, the court agrees.

Thus, to the extent defendant Sarabia seeks the dismissal of only plaintiff's Eighth and Fourteenth Amendment claims, and to the extent plaintiff agrees and seeks the resolution of only his Fourth amendment claim, there appears to be no dispute raised by defendant Sarabia's motion.[2]

---

[2] It appears that plaintiff has willingly dismissed his Eighth and Fourteenth Amendment claims against defendant Rodriguez as well as defendant Sarabia. Plaintiff's opposition to Rodriguez's motion to dismiss asserts only a Fourth Amendment violation. See ECF No. 58, pg. 2, ln. 1-4.

4

**B.      Defendant Rodriguez's Motion to Dismiss**

On June 14, 2019, defendant Rodriguez filed his own Rule 12(b)(6) motion to dismiss plaintiff's first amended complaint. See ECF No. 56. Rodriguez argues that, because he is a federal agent, plaintiff's complaint does not properly state a private right of action under applicable law. Id. Specifically, defendant argues:

> The [complaint] alleges that Deputy Rodriguez violated Bivins' rights under the Fourth Amendment when Deputy Rodriguez shot at Bivins following a high-speed vehicle chase. The claims must be dismissed because, under the Supreme Court's decision in Ziglar v. Abbasi, this Court cannot recognize a cause of action against Deputy Rodriguez in this context. 137 S. Ct. 1843, 1855-58 (2017).

ECF No. 56-1, pg. 1.

On July 2, 2019, plaintiff filed an opposition to Rodriguez's motion to dismiss. See ECF No. 58. Plaintiff makes further factual allegations and asserts that his Fourth Amendment rights were violated. Id. Therefore, the main issue here is whether plaintiff's complaint has properly stated a Fourth Amendment claim against defendant Rodriguez, a federal law enforcement officer.

Defendant Rodriguez argues that plaintiff has failed to state a valid claim under the Fourth Amendment because plaintiff's case does not present a valid action under the Bivins doctrine. This court agrees.

"In 1971, the Supreme Court recognized for the first time an implied right of action against federal officers for constitutional violations." Ioane v. Hodges, No. 16-16089, 2019 U.S. App. LEXIS 28475, at *8 (9th Cir. Sep. 19, 2019) (referencing Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)). "Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. To state a claim under Bivens, a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor." Mendez v. United States, No. 1:17-cv-00555-LJO-MJS (PC), 2018 U.S. Dist. LEXIS 60834, at *4-5 (E.D. Cal. Apr. 9, 2018) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)) (internal citations omitted).

However, the Supreme Court has recently expressed a desire to restrict the application of the Bivens doctrine. In Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), "the Supreme Court clearly stated that 'expanding the Bivens remedy is now a disfavored judicial activity,' and the Court has 'consistently refused to extend Bivens to any new context or new category of defendants.'" Williams v. Verna, No. 1:16-cv-00764-AWI-SAB (PC), 2018 U.S. Dist. LEXIS 186727, at *11 (E.D. Cal. Oct. 30, 2018) (citing Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017)). "The Court set forth a two-part test to determine whether a Bivens claim may proceed. The district court must first determine whether the claim presents a new context from previously established Bivens remedies. If so, the Court must then apply a 'special factors' analysis to determine whether 'special factors counsel hesitation' in expanding Bivens absent affirmative action by Congress." Id. (internal citations and quotations omitted).

1. New Bivens Context

"Since Bivens, the Supreme Court has recognized implied causes of action for damages against federal employees for only three types of constitutional violations: (1) police search and seizure in violation of the Fourth Amendment, see Bivens, 403 U.S. 388; (2) gender discrimination by a Congressman in violation of the Fifth Amendment for an employee not covered by Title VII, see Davis v. Passman, 442 U.S. 228 (1979); and (3) deliberate indifference toward [the medical care of] a prisoner in violation of the Eight Amendment, see Carlson v. Green, 446 U.S. 14 (1980); see also Minneci, 132 S.Ct. at 621–22." Ardalan v. McHugh, No. 13-CV-01138-LHK, 2013 WL 6212710, at *10 (N.D. Cal. Nov. 27, 2013)

"The proper test for determining whether a case presents a new Bivens context is as follows. If the case is different in a meaningful way from previous Bivens cases decided by this [U.S. Supreme] Court [see three instances above], then the context is new." Abbasi, 137 S.Ct. at 1859. As Abbasi states:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous

6

| | |
|---|---|
| 1 | Bivens cases did not consider. |
| 2 | Id. at 1859-60. |
| 3 | |
| 4 | Here, defendant Rodriguez argues that plaintiff's complaint presents a new Bivens |
| 5 | context. Rodriguez contends that plaintiff's factual allegations are starkly different than those presented in any of the three previously accepted Bivens cases. Specifically, he states: |

> Here, the claim against Deputy Rodriguez arises in a new context that differs in meaningful ways from the Supreme Court's three prior Bivens decisions. Two of those decisions – Davis, which involved a claim of sex discrimination under the Fifth Amendment, and Carlson, which involved a claim of failure to provide medical treatment to a prisoner under the Eighth Amendment – have no bearing here. The third case, Bivens, involved a claim that federal narcotics officers violated the plaintiff's Fourth Amendment rights when they entered and searched his apartment and arrested him without a warrant and without probable cause. *See Bivens*, 403 U.S. at 389.
>
> * * *
>
> The claims against Deputy Rodriguez here arise in a far different context than the claims in Bivens. Quite unlike Bivens, this case involves a high-speed chase of a known fugitive that culminated in a firearm discharge. The FAC admits to the high-speed chase. See ECF 37 at 1 ("Deputy Rodriguez and CHP Sarabia was chasing me in a high-speed chase."). High-speed chases require making split-second decisions in rapidly changing circumstances. The fact that Bivins was a fugitive from justice who was accused of armed robbery only heightened the serious officer and public safety concerns at issue. Bivens, in contrast, involved a carefully coordinated raid of the plaintiff's home by narcotics officers and did not involve any shots fired. See Bivens, 403 U.S. at 389. The factual scenario here is decidedly different from the facts in Bivens.

ECF No. 56-2, pg. 5.

The court finds these arguments persuasive. As mentioned in defendant's motion, plaintiff's complaint deals with an alleged Fourth Amendment violation stemming from a violent police chase. This is a stark contrast from either Davis, which dealt with a claim sex discrimination under the Fifth Amendment, or Carlson which involved a claim of medical misconduct under the Eighth Amendment. Therefore, the only remaining case by which plaintiff's complaint could be comparatively described as not presenting a new context is Bivens itself. Like Bivens, plaintiff's complaint deals with a Fourth Amendment violation. However, as noted by defendant, the mere fact that plaintiff's complaint raises a Fourth Amendment claim

does not mean that it arises under the same context as the one present in Bivens. See ECF 56-1, pg. 6. The factual scenarios between Bivens and this case clearly raise different concerns. Bivens is primarily, and very particularly, concerned with the warrantless search of a person.³ Plaintiff's complaint, by contrast, concerns the reasonableness of a seizure of a person by use of deadly force. Plaintiff's filed opposition does not refute that there is no meaningful distinction. Plaintiff acknowledges that "Ziglar and Bivens [were] not unharmed suspect [sic] that was shot by a Deputy U.S. Marshal while the [sic] hands were in the air trying to surrender." ECF No. 58, pg. 4. Instead, plaintiff argues that his situation satisfies the "special factors" analysis of the second part of the new Bivins test. See ECF No. 58, pg. 4-5. This issue will be addressed in the section below.

Also, it should be noted that, in his opposition to defendant's motion to dismiss, plaintiff argues that Rodriguez's conduct was the result of inadequate training and that failure to train may serve as a basis for a Bivens claim. See ECF No 58, pgs. 4-5. While inadequacy of police training may serve as the basis for civil rights liability, plaintiff's argument is flawed for two reasons. First, plaintiff's first amended complaint, the pleading which drives this current action, makes no allegations about an inadequacy in the training of deputy Rodriguez. Second, as recognized in previous decisions by courts under the Ninth Circuit, and stated in plaintiff's own opposition, this form of Biven's claim only applies when ". . . the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Flores-Ramirez v. Three Unknown Fed. Task Force Agents, No. CV 17-2360 SJO (SS), 2018 U.S. Dist. LEXIS 42970, at *8 (C.D. Cal. Mar. 15, 2018) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); see also ECF 58, pg. 5. While deliberate indifference may establish a constitutional deprivation under the Eighth Amendment, plaintiff's action is currently proceeding

---

³ See Williams v. Verna, No. 1:16-cv-00764-AWI-SAB (PC), 2018 U.S. Dist. LEXIS 186727, at *16 (E.D. Cal. Oct. 30, 2018) ("[Plaintiff's] Fourth Amendment claim differs meaningfully from the Fourth Amendment claim in Bivens because his claim arises out of allegations concerning a routine search for contraband, not **a warrantless search of a person**.") (bold added); see also Ioane v. Hodges, No. 16-16089, 2019 U.S. App. LEXIS 28475, at *10-11 (9th Cir. Sep. 19, 2019) (". . . this case is similar to Bivens. . . [plaintiff's] claim here is that a federal agent **conducted a warrantless search of her person** in violation of her Fourth Amendment right to bodily privacy.) (bold added).

solely on claims stemming from the Fourth Amendment. Therefore, plaintiff's complaint arises from a different context than those previously approved under <u>Bivens</u> and must be subjected to "special factors" analysis.

    2. <u>Special Factors Analysis</u>

"If the case presents a new <u>Bivens</u> context, then the court proceeds to step two. At step two, a court may extend <u>Bivens</u> in a new context only if two conditions are met." <u>Ioane v. Hodges</u>, No. 16-16089, 2019 U.S. App. LEXIS 28475, at *9 (9th Cir. Sep. 19, 2019).

> First, "the plaintiff must not have any other adequate alternative remedy." <u>Rodriguez</u>, 899 F.3d at 738. Second, "there cannot be any 'special factors' that lead [the court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." <u>Id.</u> While the Supreme Court has yet to define the term, 'special factors,' it has explained that 'the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Abbasi</u>, 137 S. Ct. at 1857-58. Therefore, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." <u>Id.</u> at 1858.

<u>Id.</u>

Here, defendant Rodriguez argues that plaintiff's complaint fails the second part of the new <u>Bivens</u> test for two reasons. First, "there is an alternative remedy in the form of a tort suit against the United States." ECF No. 56-1, pg. 7. Second, the structure of the Federal Torts Claim Act (FTCA) ". . . provides Congressional cues that counsel against implying a <u>Bivens</u> remedy when a claim otherwise exists for the relevant conduct under the FTCA." <u>Id.</u> at 8. This court finds both arguments convincing.

As to the availability of an alternative remedy, defendant is correct in stating that plaintiff could have filed a tort claim under the FTCA. The FTCA allows a plaintiff to sue the United States for torts committed by its employees while acting within their official capacity. <u>See</u> 28 U.S.C. § 2674. This remedy extends to claims of assault and battery committed by federal law enforcement officers. <u>See</u> 28 U.S.C. § 2680(h). From the allegations made in plaintiff's complaint, it appears that defendant Rodriguez was acting in the course and scope of his duties as a federal law enforcement officer when he shot plaintiff. <u>See</u> ECF No. 29, pg. 2. As evidenced in defendant's motion to dismiss, multiple courts have held that the availability of tort remedies

strongly discourages the extension of a Bivens-style remedy to new contexts.

> The Supreme Court and other federal courts have found the availability of tort remedies to counsel against creation of a Bivens-style remedy. See, e.g., Minneci v. Pollard, 565 U.S. 118, 125-26 (2012) (stating that availability of tort remedies was a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding" *Bivens* remedy (internal quotations and citations omitted)); Perez, 331 F. Supp. 3d at 1110 (availability of potential FTCA claims counseled against recognizing a Bivens remedy in case alleging excessive use of force by Border Patrol officer); see also Vega v. United States, 881 F.3d 1146, 1154-55 (9th Cir. 2018) (declining to recognize Bivens remedy against private prison contractors because, among other reasons, plaintiff had tort remedies available).

ECF No. 56-1, pgs. 7-8.

Plaintiff offers no opposition to this argument and simply contends that the circumstances of his arrest were unconstitutional and warrant review by this court. See ECF No. 58, generally.

As to the second facet of the Abbasi "special factors" analysis, Rodriguez asserts that (1) the structure of the FTCA suggests that Congress intended for the FTCA to bar Bivens actions for claim arisings from the same misconduct and (2) allowing a Bivens claim to proceed in this context would detrimentally affect government operations. See ECF No 56-1, pgs. 8-9.

As to the structure of the FTCA, defendant argues:

> Under [the judgement bar] rule, a judgment in an action under the FTCA "constitute[s] a complete bar to any action by the [plaintiff] . . . against the employee of the government whose act or omission gave rise to the claim" for the same subject matter. 28 U.S.C. § 2676. Thus, when a tort claim under the FTCA is litigated to judgment, Congress has specifically expressed its intent to bar any other claims against the employee based on the same subject matter. This statute evinces an intent to have such claims litigated as tort claims against the United States, rather than as *Bivens* claims against the individual employee.

ECF No 56-1, pgs. 8-9.

As to the detrimental affect on government operations, defendant argues:

> The Supreme Court has long acknowledged the potential significant impact of a *Bivens* remedy on government operations. See, e.g., Anderson v. Creighton, 483 U.S. 635, 638 (1987) ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."). Abbasi specifically states that "the decision to recognize a damages remedy

///

requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 S. Ct. at 1858.

ECF No 56-1, pgs. 8-9.

In considering defendant's arguments, this court is convinced that plaintiff's complaint has failed to satisfy the "special factors" analysis now required for the validation of Bivens claims. In his assertion that the structure of FTCA evinces an intent to bar Bivens claims, defendant provides no supporting authority or prior decision by this court to bolster his argument. However, despite this deficiency, defendant has presented sufficient arguments to establish that plaintiff has failed to articulate a valid Bivens claim. As discussed above, plaintiff has an alternative remedy in the form of a suit against the United States under the FTCA. Also, defendant's assertion that expanding Bivens to this context would financially burden national law enforcement must carry some consideration. Abbasi, which drives this new framework, acknowledged that the financial burdens of recognizing a damages remedy in systemwide contexts may be a "special factor" which counsels against extending the availability of Bivens claims. Abbasi, 137 S. Ct. at 1858. Lastly, although Abbasi did not close the door on future claims arising from different contexts, it cannot be ignored that the Supreme Court's has expressed an aversion to expanding the applicability of Bivens. Therefore, based on the arguments presented above, it is the opinion of this court that plaintiff's complaint has failed to overcome the recent hurdles now placed in front of those seeking relief under the Bivens doctrine.[4]

///

///

///

---

[4] It should be noted that the Supreme Court is currently scheduled to hear arguments on a similar case, Jesus C. Hernandez, et al., v. Jesus Mesa, Jr. See U.S. Supreme Court docket, case 17-1678. Petitioners, parents of a Mexican teen shot by a U.S. border agent are seeking damages against the official under the Bivens doctrine. Petitioners are appealing a Fifth Circuit decision stating that the shooting of the 15-year-old boy along the U.S.-Mexico border did not bear enough similarities to other cases in which Bivens damages were awarded. See Hernandez v. Mesa, 885 F.3d 811 (5th Cir. 2018). That case similarly deals with a Fourth Amendment Bivens claim stemming from alleged excessive use of deadly force.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendant Rodriguez's motion to dismiss (ECF No. 56) be granted;
2. Defendant Sarabia's motion to dismiss (ECF No. 43) be granted;
3. Defendant Rodriguez be dismissed as a party to this action; and
4. The action proceeds solely on plaintiff's Fourth Amendment claim against defendant Sarabia.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 13, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE