1

2

3

4

5

6

7

8                           **IN THE UNITED STATES DISTRICT COURT**

9                         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11     JOHN PENN BIVINS,                        No.  2:18-CV-2671-JAM-DMC-P

12                    Plaintiff,

13              v.                               <u>FINDINGS AND RECOMMENDATIONS</u>

14     CHRIS SARABIA,

15                    Defendant.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18     42 U.S.C. § 1983.  The only parties remaining in the action now are Plaintiff and Defendant

19     Christopher Sarabia.  Pending before the Court are Defendant's motion for summary judgment,

20     ECF No. 103, and Plaintiff's opposition, ECF No. 106.  Also before the Court are Defendant's

21     objection to Plaintiff's evidence, ECF No. 107, Plaintiff's sur-reply, ECF No. 110, and

22     Defendant's motion to strike Plaintiff's sur-reply.[1]

23     / / /

24     / / /

25     / / /

26     _____

27          [1]      As discussed below, the Court finds that reference to Plaintiff's evidence to which
       Defendant objects and Plaintiff's sur-reply was not necessary to resolve the pending motion for
       summary judgment.  Therefore, it is not necessary to address Defendant's objections or motion to
28     strike.

                                                        1

# I. BACKGROUND

Plaintiff alleges that on November 21, 2017, Plaintiff, Defendant Sarabia, and Deputy U.S. Marshal Rodriguez were engaged in a vehicle chase to apprehend Plaintiff.  See ECF No. 29, pg. 1.  Towards the end of the chase, Officer Rodriguez's vehicle struck Plaintiff's vehicle causing the latter to spin out of control.  See id. at 2.  When the vehicle came to a stop, both Defendant and Officer Rodriguez approached Plaintiff's vehicle with their firearms drawn.  See id.  Plaintiff raised his hands in surrender and asked that Defendant and Officer Rodriguez not shoot him.  See id.  Officer Rodriguez told Plaintiff to put his hands in the air and step out of the vehicle.  See id.  Officer Rodriguez then yelled profanity at him and, while Plaintiff's hands were in the air, shot at Plaintiff.  See id.  Plaintiff was struck in his left forearm and right-hand ring finger.  See id.

Plaintiff then ducked down in his car and drove approximately 50-100 feet away passed the officers to avoid being shot again.  See id.  Defendant opened fire on Plaintiff's while Plaintiff was driving away from Defendant.  See id.  As a result, glass shattered and cut Plaintiff on his right hand and arm.  See id.  Plaintiff drove about 200-300 feet further away and stopped to tend to his gunshot wounds.  See id. at 3.  Plaintiff contends that: (1) he initially attempted to surrender; (2) he only fled to avoid being shot again; and (3) Defendant's violent conduct deprived him of his Fourth Amendment right against excessive force.  See id.

Plaintiff pled no contest to one count of assault against Defendant with a deadly weapon.  See ECF No. 103-6, pgs. 25, 31.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  THE PARTIES' EVIDENCE

A.  **Defendant's Evidence**

Defendant's motion is supported by the sworn declarations of Defendant Sarabia, ECF No. 103-5, Marco Rodriguez, ECF No. 103-4, and Defendant's counsel, LeeAnn E. Whitmore, Esq., ECF No. 103-6.  Defendant also relies on the following exhibits attached to the declaration of LeeAnn E. Whitmore:

| | | |
|---|---|---|
| Exhibit A | | Deposition of John P. Bivins.  ECF No. 103-6, pgs. 4-16. |
| Exhibit B | | Third Amended Consolidated Felony Complaint in the case of People v. Bivins.  ECF No. 103-6, pgs. 17-28. |
| Exhibit C | | Advisement of Rights, Waiver and Plea Form Felony, signed by Plaintiff in the case of People v. Bivins.  ECF No. 103-6, pgs. 29-39. |
| Exhibit D | | Plea Documents.  ECF No. 103-6, pgs. 40-43 |
| Exhibit E | | June 18, 2020, Minute Order, in the case of People v. Bivins.  ECF No. 103-6, pgs. 44-49. |

Additionally, Defendant Sarabia offers a Statement of Undisputed Facts alongside his motion for summary judgment in which he states the following facts are undisputed:

1.      Plaintiff, John Bivins' (Bivins) suit is based on allegations that California Highway Patrol Officer Sarabia violated his Fourth Amendment rights.

2.      On November 21, 2017, Bivins was a wanted fugitive arising from an escape from custody from the Santa Clara County courthouse in Palo Alto, several weeks earlier while he was appearing for charges related to an armed robbery.

3.      Mr. Bivins has been convicted of felonies of evading an officer and firearms possession prior to November 21, 2017.

4.      Mr. Bivins was aware that he was wanted by law enforcement on November 21, 2017.

5.      Deputy Rodriguez was part of a fugitive apprehension team working to apprehend Mr. Bivins and Mr. Clough, both of whom were wanted for warrants from Santa Clara County.

6.      On November 21, 2017, Officer Sarabia and other law enforcement personnel were assisting the United States Marshal's Service with the attempted apprehension of Mr. Bivins and Mr. McClough.

7.      At approximately 5:15 p.m., Deputy Rodriguez observed Mr. Bivins in the passenger side of a green Ford Explorer.

8.      He requested that the California Highway Patrol officers initiate a high-risk felony traffic stop for the vehicle as it entered Northbound Interstate 5.

9.      CHP Officer Dickinson initiated the stop by operating lights and sirens of his patrol vehicle.  Officer Sarabia was in a second marked CHP vehicle behind him.

10.     Mr. Bivins became aware the officers were attempting to apprehend him when he saw the lights behind him.

11.     The Explorer initially pulled over to the shoulder but accelerated off the freeway onto Eight Mile Road.  Four marked law enforcement vehicles with lights and sirens activated pursued as well as two unmarked United States Marshal vehicles with lights and sirens activated.

12.     The pursuit lasted several miles until the Explorer pulled into a Wal Mart parking lot.

13.     The Explorer stopped in front of Wal Mart and the driver, McClough, exited.

14.     Bivins moved into the driver's seat of the Explorer, drove through the parking lot and turned southbound onto Trinity Parkway at a high rate of speed.

15.     Deputy Rodriguez managed to get behind the Explorer and Officer Sarabia followed behind with lights and sirens still activated.

16.     Bivins was aware of the two law enforcement vehicles behind him.

17.     He knew he was going to be taken into custody again if he was pulled over.

18.     Bivins lead officers on a high-speed chase.

19.     Trinity Parkway came to a dead end.

20.     At the dead-end, Mr. Bivins turned left and made a U-turn in front of Deputy Rodriguez's vehicle.

21.     The right front of Deputy Rodriguez clipped the rear bumper of Bivins' vehicle causing Bivins' vehicle to spin.

22.     Mr. Bivins' vehicle ended up on the driver's side of Deputy Rodriguez vehicle and the vehicles were almost perpendicular to each other.  The front of Mr. Bivins' vehicle was approximately 8 to 12 feet from Deputy Rodriguez's vehicle.

23.     Officer Sarabia stopped his vehicle a short distance behind Deputy Rodriguez's vehicle.

/ / /

4

24.     Deputy Rodriguez provided verbal commands to Bivins to put his hands up and exit the vehicle.

25.     Mr. Bivins appeared to put his hands up but did not shut off his vehicle or exit the vehicle.

26.     Based on Bivins' prior escape from custody and attempts to evade officers, Officer Sarabia thought Bivins might attempt to flee on foot.  He went to the rear of his patrol vehicle to let K-9 Perry out in case a foot pursuit was necessary.

27.     Deputy Rodriguez requested that Officer Sarabia provide him cover because he was concerned about the lack of distance between himself and Mr. Bivins.

28.     Within seconds, as Deputy Rodriguez was beginning to step out of his vehicle, Deputy Rodriguez heard Mr. Bivins' vehicle coming towards him.

29.     He feared for his life as he believed Mr. Bivins' vehicle would hit him.  He slid back into the driver's seat for protection and fired four rounds.

30.     Deputy Rodriguez then saw Mr. Bivins' vehicle heading toward Officer Sarabia and feared that he was going to hit Officer Sarabia.

31.     Officer Sarabia saw Mr. Bivins drive toward Deputy Rodriguez and heard shots fired.

32.     Officer Sarabia did not see Deputy Rodriguez after hearing the shots and did not know who fired the shots.

33.     As Officer Sarabia was standing at the rear driver's door of his vehicle, attempting to secure K-9 Perry, he observed Mr. Bivins driving in a northerly direction, towards him.

34.     Mr. Bivins' vehicle was driving approximately 25 to 30 m.p.h.

35.     Officer Sarabia feared for his safety and thought Bivins was going to hit him with his vehicle.

36.     Officer Sarabia fired three shots toward the vehicle.

37.     Officer Sarabia was unaware whether he hit Mr. Bivins as Mr. Bivins continued to drive down Trinity Parkway evading capture.

38.     Mr. Bivins did not notify Officer Sarabia that he had been shot at any time.

39.     The events on Trinity Parkway took place in a matter of seconds.

///

5

40.     After Bivins was apprehended, the Santa Clara County District Attorney's Office filed the Third Amended Consolidated Criminal Complaint (TAC), Superior Court of California, County of Santa Clara, case number B1790402.  The TAC alleged multiple counts including Counts 12 and 13, felonies involving violation of California Penal Code § 245(C), felony assaults on peace officers with a deadly weapon on November 21, 2017, involving Officer Sarabia and Deputy Rodriguez.

41.     On June 18, 2020, Mr. Bivins pled no contest to numerous charges including Count 11, escape from custody, and Counts 12 and 13, assault on peace officers with a deadly weapon.

42.     Bivins freely, knowingly, and voluntarily entered into the plea agreement.

ECF No. 103-3.

**B.     Plaintiff's Evidence**

Plaintiff opposes Defendant's motion for summary judgment.  Plaintiff does not reproduce the itemized facts in the Statement of Undisputed Facts.  Plaintiff does, however, reallege his account of what took place and supports his account and opposition with the following exhibits:

| | |
|---|---|
| Exhibit A | Accident Reconstruction Expert Evaluation of Incident. ECF No. 106, pgs. 23-43. |
| Exhibit B | Medical Expert Evaluation of Gunshot Wounds.  ECF No. 106, pgs. 44-60. |
| Exhibit C | Declaration and Interview of Deborah Ann Antram.  ECF No. 106, pgs. 61-71. |
| Exhibit D | Court Documents Evidencing Delay Tactics.  ECF No. 106, pgs. 72-79. |
| Exhibit E | Defense Sentencing Memorandum & Statement in Mitigation.  ECF No. 106, pgs. 80-86. |
| Exhibit F | Advisement of Rights, Waiver and Plea Form Felony, signed by Plaintiff in the case of People v. Bivins.  ECF No. 106, 87-92. |
| Exhibit G | Letter to Judge Robert B. Hawk.  ECF No. 106, 93-99. |

Plaintiff's opposition seems to be within the spirit of Local Rule 260(b) despite his lack of reproducing Defendant's itemized facts.

///

6

1

### III.  STANDARD FOR SUMMARY JUDGMENT

2          The Federal Rules of Civil Procedure provide for summary judgment or summary

3   adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

4   together with affidavits, if any, show that there is no genuine issue as to any material fact and that

5   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

6   standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

7   56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

8   the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

9   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

10  moving party

11          . . . always bears the initial responsibility of informing the district court of
            the basis for its motion, and identifying those portions of "the pleadings,
12          depositions, answers to interrogatories, and admissions on file, together
            with the affidavits, if any," which it believes demonstrate the absence of a
13          genuine issue of material fact.

14          Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P.
            56(c)(1).

15

16          If the moving party meets its initial responsibility, the burden then shifts to the

17  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

18  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

19  establish the existence of this factual dispute, the opposing party may not rely upon the

20  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

21  form of affidavits, and/or admissible discovery material, in support of its contention that the

22  dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

23  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

24  affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

25  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

26  Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

27  return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

28  (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

7

1  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

2  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

3  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

4  claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

5  of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

6         In resolving the summary judgment motion, the court examines the pleadings,

7  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

8  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

9  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

10  court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

11  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

15  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

16  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

17  imposed." Anderson, 477 U.S. at 251.

18

19  **IV.  DISCUSSION**

20         In his motion for summary judgment, Defendant Sarabia argues that he is entitled

21  to judgment as a matter of law for the following reasons:  (1) the undisputed facts demonstrate

22  that Defendant Sarabia did not use excessive force; (2) the Heck doctrine bars Plaintiff's Fourth

23  Amendment claim because he pleaded no contest to charges arising from the use of deadly force

24  and success on the merits here would necessarily imply the invalidity of the conviction resulting

25  from Plaintiff's plea; and (3) Defendant Sarabia is entitled to qualified immunity.  See ECF No.

26  103-2, pgs. 6-11.

27  / / /

28  / / /

A.      **Excessive Force**

The Civil Rights Act provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

Thus, to prevail on a valid claim under § 1983, a plaintiff must prove that the conduct complained of was committed by a person acting under color of state law, and that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–95 (1978); Rizzo v. Goode, 423 U.S. 362, 370–71 (1976).  As noted above, Plaintiff asserts a violation of his Fourth Amendment right against use of excessive force.  The parties do not dispute that Defendant was acting under color of state law at the relevant time.  Therefore, the only remaining question is whether Defendant deprived Plaintiff of his constitutional rights.

Plaintiff alleges that Defendant employed excessive force against Plaintiff on November 21, 2017.  A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment's objective reasonableness standard.  Graham v. Connor, 490 U.S. 386, 395 (1989); Tennessee v. Garner, 471 U.S. 1, 7–8 (1985).  Under this standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the need for force which is at the heart of the Graham factors.'"  Liston v. Cty. of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (quoting Alexander v. City & Cty. of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)); see also Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir. 2003).  Thus, in light of the facts and circumstances surrounding a law enforcement officer's actions, courts "must balance the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010) (citations and internal quotations omitted); see also Scott v. Harris, 550 U.S. 372, 383–84 (2007); Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); Deorle v. Rutherford, 272 F.3d 1272, 1280

9

(9th Cir. 2001).  "Force is excessive when it is greater than is reasonable under the

circumstances." <u>Santos</u>, 287 F.3d at 854 (citing <u>Graham</u>, 490 U.S. at 386).  Accordingly,

> [a]lthough it is undoubtedly true that police officers are often forced to make split-second judgments, and that therefore not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers is a violation of the Fourth Amendment, it is equally true that even where some force is justified, the amount actually used may be excessive.

> Id. at 853 (citations and internal quotations omitted).

In considering the pending motion for summary judgment, the following

admonition of the Ninth Circuit with respect to the use of summary judgment in cases involving

claims of excessive use of force must be kept in mind:

> Under the Fourth Amendment, law enforcement may use "objectively reasonable" force to carry out such seizures; as in the unlawful arrest analysis, this objective reasonableness is determined by an assessment of the totality of the circumstances . . . .  Because this inquiry is inherently fact specific, the "determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases."

> <u>Green v. City & Cty. of San Francisco</u>, 751 F.3d 1039, 1049 (9th Cir. 2014) (citations omitted).

1.      <u>Nature and Quality of the Intrusion</u>

The Court begins its analysis by assessing both the type and the amount

of force used.  <u>See Bryan</u>, 630 F.3d at 824; <u>Davis v. City of Las Vegas</u>, 478 F.3d 1048, 1055 (9th

Cir. 2007).  Here, it is undisputed that Defendant fired his weapon at Plaintiff.  <u>See</u> ECF No. 103-

5, pg. 3.  Shooting a suspect with a firearm constitutes use of deadly force.  <u>Blanford v.</u>

<u>Sacramento Cty.</u>, 406 F.3d 1110, 1115 n.9 (9th Cir. 2005) (defining "deadly force" as

"force creating a substantial risk of causing death or serious bodily injury") (citing <u>Smith v. City</u>

<u>of Hemet</u>, 394 F.3d 689, 704–07 (9th Cir. 2005) (en banc)).  It is well established that:

> The intrusiveness of a seizure by means of deadly force is unmatched. The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a fundamental interest in his own life and because such force frustrates the interest of the

/ / /

1    individual, and of society, in judicial determination of guilt and
     punishment.

2
     A. K. H. by & through Landeros v. City of Tustin, 837 F.3d 1005, 1011
3    (9th Cir. 2016) (citations and quotation marks omitted).

4        2.      Governmental Interests at Stake

5        Having identified that deadly force is at issue, the Court must balance the use of

6    that force against the need for such force.  See Glenn v. Washington Cty., 673 F.3d 864, 871 (9th

7    Cir. 2011); Bryan, 630 F.3d at 823; Liston, 120 F.3d at 976.  In analyzing the government's

8    interests at issue, courts must consider a number of factors, including: (1) the severity of the

9    crime, (2) whether the suspect posed an immediate threat to the safety of the officers or others,

10   and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight, and any

11   other exigent circumstances.  Estate of Diaz v. City of Anaheim, 840 F.3d 592, 605 (9th Cir.

12   2016); Glenn, 673 F.3d at 872; Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011) (en banc);

13   Deorle, 272 F.3d at 1280.  Ultimately, the Court must "examine the totality of the circumstances

14   and consider whatever specific factors may be appropriate in a particular case, whether or not

15   listed in Graham."  Ventura v. Rutledge, 398 F. Supp. 3d 682, 689 (E.D. Cal. 2019) (quoting

16   Hughes v. Kisela, 862 F.3d 775, 779 (9th Cir. 2016)).

17       The most important governmental interest factor is whether the suspect poses an

18   immediate threat to the safety of the officer or others.  Hughes, 862 F.3d at 779; A. K. H., 837

19   F.3d at 1011; Bryan, 630 F.3d at 826; Smith, 394 F.3d at 702; see also Rodriguez v. Swartz, 899

20   F.3d 719, 728–29 (9th Cir. 2018).  It has been recognized that "[a] desire to resolve quickly a

21   potentially dangerous situation is not the type of governmental interest that, standing alone,

22   justifies the use of force that may cause serious injury."  Hughes, 862 F.3d at 780 (quoting

23   Deorle, 272 F.3d at 1281); see also Estate of Diaz, 840 F.3d at 605; George, 736 F.3d at 838.

24   Moreover, it has long been established "that the fact that the 'suspect was armed with a deadly

25   weapon' does not render the officers' response per se reasonable under the Fourth Amendment."

26   George, 736 F.3d at 838 (emphasis in original) (quoting Glenn, 673 F.3d at 872-73); see also

27   Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997) ("Law enforcement officials may not kill

28   suspects who do not pose an immediate threat to their safety or to the safety of other simply

1

2   because they are armed."); <u>Curnow v. Ridgecrest Police</u>, 952 F.2d 321, 323, 325 (9th Cir. 1991)

3   (holding that deadly force was unreasonable where, according to the plaintiff's version of facts,

4   the decedent possessed a gun but was not pointing it at the officers and was not facing the officers

5   when they shot him).  Further, "[w]here the suspect poses no immediate threat to the officer and

6   no threat to others, the harm resulting from failing to apprehend him does not justify the use of

7   deadly force to do so."  <u>Garner</u>, 471 U.S. at 11.  However, "where the officer has probable cause

8   to believe that the suspect poses a threat of serious physical harm, either to the officer or to

9   others, it is not constitutionally unreasonable to prevent escape by deadly force."  <u>Garner</u>, 471

10  U.S. at 11.

11          On or about November 6, 2017, Plaintiff escaped from jail while awaiting charges

12  for armed robbery.  <u>See</u> ECF No. 103-6, pgs. 25, 31.  About two weeks later Plaintiff was in a

13  vehicle chase with Defendant and Officer Rodriguez after Rodriguez requested that the California

14  Highway Patrol officers initiate a high-risk felony traffic stop on Plaintiff.  <u>See</u> ECF No. 103, pg.

15  2.  Towards the end of the chase, Plaintiff assaulted Defendant with his vehicle.  <u>See</u> ECF No.

16  103-6, pgs. 25, 31.  As will be discussed further below, Plaintiff stipulated by entering a no

17  contest plea that Defendant used reasonable force during the assault.  Plaintiff proceeded past

18  Defendant after committing the assault.  ECF No. 103-5, pg. 3.  It is not disputed that Plaintiff

19  was driving 25 to 30 m.p.h when he proceeded past Defendant.  ECF No. 103-2, pg. 8.

20          The issue is whether Defendant was reasonable *after* Plaintiff proceeded past

21  Defendant.  It is undisputed that Defendant fired his gun multiple times at Plaintiff.  <u>See</u> ECF No.

22  103-5, pg. 3.  However, when in time the shots were fired has not been determined.  Shots fired

23  *after* the commission of the assault could have been unreasonable.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

2          Viewing Defendant's evidence in the light most favorable to Plaintiff, Defendant

3   has not carried his burden.  Defendant has not provided evidence demonstrating that Defendant

4   did not fire shots *after* the commission of the assault.  Defendant provides his own declaration

    stating:

5

6          . . . I observed [Plaintiff] driving in a northerly direction, directly
           towards me.  I feared for my safety and thought that he was going to
7          hit me with the vehicle and did not know whether he had hit Deputy
           Rodriguez.  I fired three shots.  The entire event on Trinity Parkway
8          took place in a matter of seconds.  [Plaintiff] continued to drive down
           Trinity Parkway evading capture.

9          ECF No. 103-5, pg. 3.

10         There is an ambiguity concerning the timing of the shots.  This statement is not

11  clear when Defendant began shooting and when Defendant stopped shooting.  It could be the

12  case that Defendant started shooting after Plaintiff passed him or, at the least, one of the three-

13  plus shots were fired after Plaintiff passed Defendant.

14         Defendant also does not argue that he was in harm's way after the vehicle passed

15  him.  Nor does Defendant argue that there were other people in immediate danger after the

16  vehicle passed him.  A jury could find: (1) that a shot or shots were fired after Plaintiff passed the

17  Defendant and (2) that it was unreasonable for Defendant to have used deadly force in that

18  instance.  As the Supreme Court said in Garner, "the harm resulting from failing to apprehend

19  [plaintiff] does not justify the use of deadly force to do so."  Garner, 471 U.S. at 11.

20         Based upon the foregoing, the undersigned recommends denying Defendant's

21  motion for summary judgment as to the merits of the excessive force claim because triable issues

22  of fact exist.

23  **B.      The *Heck* Doctrine**

24         Where a § 1983 action seeking monetary damages or declaratory relief alleges

25  constitutional violations which would necessarily imply the invalidity of the prisoner's underlying

26  conviction or sentence, such a claim is not cognizable under § 1983 unless the conviction or

27  sentence has first been invalidated on appeal, by habeas petition, or through some similar

28  proceeding.  See Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 claim

not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (concluding that § 1983 claim not cognizable because allegations of procedural defects were an attempt to challenge substantive result in parole hearing); cf. Neal, 131 F.3d at 824 (concluding that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and not to any particular parole determination); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005) (concluding that § 1983 action seeking changes in procedures for determining when an inmate is eligible for parole consideration not barred because changed procedures would hasten future parole consideration and not affect any earlier parole determination).  "Heck instructs that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'"  Lemos v. Cty. Of Sonoma, 5 F.4th 979, 983 (9th Cir. 2021) (quoting Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)).  Thus, the Heck gate shall remain closed if the 1983 action would negate an element of the offense of the plaintiff's underlying conviction.  See Lemos, 5 F.4th at 983; see also Smithart, 79 F.3d at 952.

However, if a "plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  Heck, 512 U.S. at 487.  Additionally, the Ninth Circuit has stated that "a successful section 1983 action for excessive force [does] not necessarily imply the invalidity of [a plaintiff's] arrest or conviction."  Smithart, 79 F.3d at 952.  For example, "a plaintiff's allegation of excessive force by a police officer is not barred by Heck if the officer's conduct is 'distinct temporally or spatially from the factual basis for the [plaintiff's] conviction.'"  Lemos, 5 F.4th at 983 (citing Beets v. Cty. of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012) (citing Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) (en banc))).

/ / /

/ / /

14

1    As such, "[a] conviction based on conduct that occurred *before* the officers

2    commence the process of arresting the defendant is not 'necessarily' rendered invalid by the

3    officers' subsequent use of excessive force in making the arrest." Lemos, 5 F.4th at 986.

4    "Similarly, excessive force used *after* a defendant has been arrested may properly be the subject

5    of a § 1983 action notwithstanding the defendant's conviction on a charge of resisting an arrest

6    that was itself lawfully conducted." Id. (citing Sanford v. Motts, 258 F.3d 1117, 1119-20 (9th

7    Cir. 2001) (explaining that a successful section 1983 suit based on excessive force would not

8    necessarily imply the invalidity of Sanford's conviction for resisting, obstructing, or delaying a

9    peace officer because the officer's use of excessive force occurred subsequent to the conduct for

10   which Sanford was convicted)).  In other words, a plaintiff's conviction of assault against an

11   officer and an excessive force claim against that same officer are not necessarily mutually

12   exclusive.  The court in Lemos "further acknowledge[d] that Heck would not necessarily bar a §

13   1983 claim for excessive force when . . . the conviction and the § 1983 claim are based on

14   different actions taken during one continuous transaction." Lemos, 5 F.4th at 984 (citing Hooper

15   v. Cty. Of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (excessive force used after an arrest is

16   made does not destroy the lawfulness of the arrest)).  "One continuous transaction" may only last

17   seconds and can contain two isolated factual contexts, "the first giving rise to criminal liability on

18   the part of the criminal defendant, and the second giving rise to civil liability on the part of the

19   arresting officer." See Hooper, 629 F.3d at 1134 (quoting Yount v. City of Sacramento, 183 P.3d

20   471, 484 (Cal. 2008)).

21   In Hooper, pending before the Ninth Circuit was an appeal from a grant of

22   summary judgment motion on plaintiff's 1983 action.  Hooper, 629 F.3d at 1130.  Prior to

23   plaintiff bringing her 1983 action, plaintiff pled guilty to resisting a peace officer.  Id.  An officer

24   was arresting the plaintiff and grabbed plaintiff's wrist.  Id.  Plaintiff jerked her hand away, and a

25   struggle ensued.  Id.  The struggle led to the plaintiff on the ground with the officer on top.  Id.

26   The officer radioed for backup.  Id.

27   / / /

28   / / /

What happened next was disputed, but the court viewed the evidence in the light most favorable to the plaintiff.  Id.  Plaintiff jerked from side to side while the officer was on her. Id.  The officer was able to get plaintiff's hands behind her back.  Id.  "She stopped resisting when [the officer] instructed her to do so."  Id.  There was no significant dispute about what happened next.  Id.  The officer's dog ran over and bit and held plaintiff's head.  Id.  According to the officer, all of this took place in a span of 45 seconds.  Id.  The court held that plaintiff's "1983 excessive force claim . . . should not have been dismissed on summary judgment as barred by Heck."  Id. at 1134.  The court reasoned that despite the events occurring during a continuous transaction, a holding in the plaintiff's 1983 case "would not 'negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of [plaintiff's] attempt to resist it.'"  Id. at 1133 (quoting Yount, 183 P.3d at 471).

Thus, this Court should look to the criminal record to determine whether the facts supporting the underlying conviction would be negated by the 1983 claim regardless of whether or not the excessive force claim and assault conviction arose out of one continuous transaction. See Lemos, 5 F.4th at 984.  As the Ninth Circuit has said, "the relevant inquiry is whether the record contains factual circumstances that support the underlying conviction under [the convicting statute]."  See id.  (citing Beets, 669 F.3d at 1045).  In other words, the Court must question whether the record shows that the excessive force claim and assault conviction are separable or whether it shows that the existence of one is dependent upon the nonexistence of the other.

The undersigned distills the above rules to a three-step analysis.  When faced with a Heck bar issue, the Court should determine (1) the elements of the underlying conviction, (2) the factual record supporting the criminal conviction, and (3) whether the section 1983 action would invalidate the conviction considering the factual record supporting the conviction.

/ / /

/ / /

/ / /

/ / /

16

1            1.      Underlying Conviction

2           The conviction at issue for purposes of the <u>Heck</u> bar is count 12 of the criminal

3 complaint, assault with a deadly weapon against Defendant in violation of P.C. § 245(c).  ECF

4 No. 103-6, pg. 25.  Penal Code § 245(c) states:

> Any person who commits an assault with a deadly weapon or
> instrument, other than a firearm, or by any means likely to produce
> great bodily injury upon the person of a peace officer or firefighter,
> and who knows or reasonably should know that the victim is a
> peace officer or firefighter engaged in the performance of his or her
> duties, when the peace officer or firefighter is engaged in the
> performance of his or her duties, shall be punished by imprisonment
> in the state prison for three, four, or five years.

10           To reiterate, "the assault or battery must be on a peace officer who is 'engaged in

11 the performance of his duties.'"  <u>People v. Delahoussaye</u>, 213 Cal. App. 3d 1, 7 (Cal. Ct. App.

12 1989).  Under California law, "[a]n officer cannot be engaged in the lawful performance of her

13 duties if she is subjecting an arrestee to excessive force."  <u>Huber v. Paxton</u>, 2016 WL 6821870,

14 at *2 (E.D. Cal. Nov. 18, 2016) (citing <u>People v. Olguin</u>, 119 Cal. App. 3d 39, 44 (Cal. Ct. App.

15 1981) and <u>Delahoussaye</u>, 213 Cal. App. At 7)).  Therefore, a finding that a peace officer did not

16 use excessive force impacts an element to the crime of assault with a deadly weapon against a

17 peace officer.  <u>See</u> <u>Huber</u>, 2016 WL 6821870, at *2; <u>Olguin</u>, 119 Cal. App. 3d at 44;

18 <u>Delahoussaye</u>, 213 Cal. App. at 7.

19            2.      Factual Record

20           Defendant's evidence of the record of the facts supporting Plaintiff's conviction

21 are quite bare.  Defendant provides Plaintiff's felony complaint.  ECF 103-6, pgs. 17-28.  The

22 complaint stated at count 12:

> On or about November 21, 2017, in the County of San Joaquin, State of
> California, the crime of assault on a peace officer or firefighter with a
> deadly weapon, in violation of penal code section 245(c), a felony, was
> committed by [Plaintiff] who did commit an assault with a deadly weapon
> and instrument, a(n) car upon the person of [the Defendant], a peace
> officer engaged in the performance of his/her duties, and the [Plaintiff]
> knew and reasonably should have known the [Defendant] was a peace
> officer engaged in the performance of his/her duties.
>
> <u>Id.</u> at 25.

1    Defendant also provides the transcript of Plaintiff's no contest plea.  ECF No. 103-

2    6, pgs. 44-49.  The court stated, "As to count 12, which alleges that on or about November 21,

3    2017, you violated Penal Code section 245(c), a felony, assault on a peace officer with a deadly

4    weapon; what is your plea?"  Id. at 47.  Plaintiff responded, "No contest."  Id.  The court also

5    asked, "and do you stipulate to a factual basis for the pleas?"  Id. at 48.  Plaintiff's counsel

6    responded, "yes, your honor, I stipulate to a factual basis based on conversations with my client."

7    Id.  Plaintiff on his plea agreement form also puts his initials next to the statement, "I agree there

8    is factual basis for my plea based on my discussions with my attorney(s) about the elements of the

9    crime(s) and any defenses I may have, and I am satisfied with the advice I received."  Id. at 37.

10   There is not an account of what transpired before or after the assault.

11         It is also important to note that because Plaintiff stipulated to a factual basis for his

12   plea, that necessarily means that the Defendant did not use excessive force *while* Plaintiff

13   committed the assault on the Defendant.  See Huber v. Paxton, 2016 WL 6821870, at *2 (E.D.

14   Cal. Nov. 18, 2016); People v. Olguin, 119 Cal. App. 3d 39, 44 (Cal. Ct. App. 1981);

15   Delahoussaye, 213 Cal. App. At 7).

16              3.      Invalidation of Conviction Analysis

17         The issue is whether Plaintiff's 1983 claim would invalidate Plaintiff's conviction

18   of assault with a deadly weapon against Defendant in light of the facts in the record supporting

19   the conviction.  The facts of the record are slim.  The record only demonstrates that while

20   Plaintiff was in the act of assaulting Defendant with his vehicle, Defendant did not act with

21   excessive force.  The record does not provide what happened prior to Plaintiff committing the

22   assault or what happened after Plaintiff committed the assault.  Defendant could have acted

23   unreasonably at either of these times.

24         Viewing Defendant's evidence in the light most favorable to the Plaintiff, some if

25   not all of the shots that were fired could have been fired after the assault occurred and not during

26   the assault.  The reasonableness of Defendant's actions has not been determined as to his actions

27   after the assault.  Thus, Plaintiff's conviction of assault would not be overturned if, upon success

28   of this 1983 action, Defendant is found to have acted unreasonably or with excessive force *after*

1    the assault on the Defendant.  To the extent Plaintiff seeks to recover damages for Defendant's

2    alleged unreasonable actions before or after the assault, Plaintiff's claim is not barred by Heck.

3            Plaintiff does seem to argue that he never committed assault with a deadly weapon

4    against Defendant.  See ECF No. 29, pg. 2.  While this may seem problematic at first blush,

5    Beckway provides instruction where a plaintiff alleges that he never committed the crime for

6    which he was convicted and where the facts are so intimately connected with the underlying

7    conviction.

8            In Beckway, the plaintiff was able to separate his 1983 claim from his unlawful

9    resistance conviction.  See Beckway v. DeShong, 2011 WL 1334430, at 3 (N.D. Cal. Apr. 7,

10   2011).  The parties disputed the facts.  Id. at 1.  Pending before the court was defendants' motion

11   for summary judgment on plaintiff's 1983 action for excessive force.  Id.  Plaintiff contended that

12   he did not resist arrest after having already pleaded no contest to that crime.  Id.  Plaintiff stated

13   that while he was being arrested, "he was thrown down, face first with his arms pinned under his

14   body."  Id.  "While on the ground, he says he felt a heavy blow to the back of his left leg."  Id.

15           Defendants, however, had a different account.  Id.  The defendants said that after

16   one of the officers took hold of the plaintiff, plaintiff pulled away and turned, causing both men to

17   lose their balance.  Id.  The defendant officer denied using any force against the plaintiff.  Id.

18           The defendants contended that because the plaintiff argued that he never resisted

19   the officers, his 1983 claim was barred by Heck.  Id. at 4.  The court stated that defendants

20               ignore the fact that these allegations would not necessarily be proven
21               if [plaintiff] were to prevail in his section 1983 claim for excessive
                 force.  What would necessarily be proven if [plaintiff] were to prevail
22               in his section 1983 claim is that 'some of the officer's conduct was
                 unlawful' relative to the resistance proven in [plaintiff's] . . .
23               conviction.

24           Id.

25           The court further stated that a "court has already found that [plaintiff] resisted the

26   officer" and that plaintiff's "statements to the contrary fail to challenge that finding, and do not

27   necessarily form the basis for his section 1983 claim."  Id.  Plaintiff's "section 1983 claim," the

28   court stated, "rests upon whether, in light of the facts established by his conviction, the officers

                                                  19

1   used excessive force against him."  Id.  The court went on to say that plaintiff's conviction

2   establishes that some aspect of the officer's response to plaintiff's resistance was reasonable and

3   lawful, but "an officer's conduct can become unlawful during the 'same "continuous

4   transaction.""  Id. (quoting Hooper, 629 F.3d at 1132).  "The officers were authorized to use

5   reasonable force, but the question here is whether some of the force they used was unreasonable."

6   Id.  The court held that a "reasonable jury could conclude that the force used against plaintiff was

7   unreasonable . . . .  Id.  Therefore, Defendants' motions for summary judgment as to [plaintiff's]

8   section 1983 claim are denied."  Id.

9            Plaintiff's case is the same.  If Plaintiff's 1983 claim is successful, it would only

10   show that some of the Defendant's actions were unreasonable, but not all.  Because Plaintiff's

11   claim will not necessarily invalidate his conviction, it is not barred by Heck.

12        **C.**     **Qualified Immunity**

13            Government officials enjoy qualified immunity from civil damages unless their

14   conduct violates "clearly established statutory or constitutional rights of which a reasonable

15   person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

16   qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

17   law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

18   immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

19   injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

20   v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

21   the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

22   context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is

23   alleged to have violated must have been 'clearly established' in a more particularized, and hence

24   more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

25   official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

26   Thus, the final step in the analysis is to determine whether a reasonable officer in similar

27   circumstances would have thought his conduct violated the alleged right.  See id. at 205.

28   / / /

1    When identifying the right allegedly violated, the court must define the right more

2    narrowly than the constitutional provision guaranteeing the right, but more broadly than the

3    factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th

4    Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

5    clear that a reasonable official would understand [that] what [the official] is doing violates the

6    right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

7    concludes that a right was clearly established, an officer is not entitled to qualified immunity

8    because a reasonably competent public official is charged with knowing the law governing his

9    conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

10   has alleged a violation of a clearly established right, the government official is entitled to

11   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

12   did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

13   also Saucier, 533 U.S. at 205.

14   The first factors in the qualified immunity analysis involve purely legal questions.

15   See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

16   determination based on a prior factual finding as to the reasonableness of the government

17   official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

18   has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

19   555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

20   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

21   Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

22   The Fourth Amendment right against excessive force has been clearly established.

23   Additionally, it has been established that "[w]here the suspect poses no immediate threat to the

24   officer and no threat to others, the harm resulting from failing to apprehend him does not justify

25   the use of deadly force to do so."  Garner, 471 U.S. at 11.  There is no evidence suggesting that

26   Defendant "reasonably but mistakenly believed" that it is lawful to shoot at a person in a vehicle

27   who is posing no immediate threat to anyone.  There are not enough facts to conclusively

28   determine when Defendant shot at the Plaintiff and whether that was reasonable.  The Court

21

should deny Defendant's motion of summary judgment.

## V.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment, ECF No. 103, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 8, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE